# Law Office of Sam Braverman

901 Sheridan Avenue                                                              PO Box 127
Bronx, New York 10451                                                 Tenafly, New Jersey 07670
Tel (718) 293-1977                                                           Tel (201) 569-1595
Fax (718) 293-5395                                                           Fax (201) 596-2724
                                                                             Braverlaw@aol.com

Samuel M. Braverman*+
Jennifer B. Arlin*+

July 25, 2011

Hon. Colleen McMahon
United States District Judge
United States Courthouse
500 Pearl Street
New York, New York 10007

**Re:** **United States v. James Cromitie (Laguerre Payen)**
      **Case No.: 09 Cr 558 (04) (CM)**

Dear Judge McMahon:

I have reviewed the Presentence Report, dated February 23, 2011, with my client Laguerre Payen, and we have the following amendments, corrections, and objections:

1. I join in all the objections raised by my co-counsel in all their submissions and oral arguments made to the Court at the sentencing of the co-defendants, and such objections are incorporated herein as if fully set forth again.

2. ¶112 states that Payen's brother William is in the US Navy and his brother Riccardo is in the US Marines. This should be reversed: William is in the Marines and Riccardo is in the Navy.

3. ¶119 states that Payen lived in Newburgh for most of his life. In fact, after immigrating to the United States, he spent most of his adolescence in Spring Valley, New York (Rockland), and only arrived in Newburgh a few months before the instant events.

4. ¶121 claims that Mr. Payen has "no major medical" issues. However, he suffers from significant pain in his back from a fall, and he also has radiating pain in his legs and feet. It is requested that the Bureau of Prisons monitor this

*Admitted In New York           +Admitted in New Jersey
The Law Office of Sam Braverman is a full service firm assisting clients, both in trial courts and on appeal,
in New York and New Jersey state courts and in federal court nationwide

injury during Mr. Payen's incarceration and prescribe pain management therapy as required.

5. ¶¶122-127 describe Mr. Payen's mental health issues as "unsupported"; i.e., the PSR concludes that Mr. Payen is malingering. This is a serious error that needs to be corrected prior to Mr. Payen's entrance into long-term incarceration. As someone who has sat with Mr. Payen throughout the last year and dealt with him repeatedly (and daily during the 8 weeks of trial), I find it absurd to dismiss his mental health issues as "unsupported." It is clear to me that, despite whatever exaggeration or embellishment Mr. Payen may have added to his illness during the trial, he clearly does suffer from psychiatric and psychological illness. He has been diagnosed as schizophrenic by several doctors over the last 10 years, and no doctor has ever repudiated that diagnosis. As schizophrenia is a congenital and degenerative disease of the mind, it is clear that Mr. Payen will need mental health treatment as part of his incarceration, and the choice of facility by BOP should take this into primary consideration. It would be cruel to simply "warehouse" him in a mountain and not address his mental health issues. I have visited Mr. Payen at the MDC, where he is in isolation due to a successful attempt to injure himself, and it is clear that his delusions are getting more and more fanciful. Although he understands his present physical condition, and his legal situation and future, he has no rational understanding of his world. The PSR does not indicate that Mr. Payen is presently receiving any mental health counseling or therapeutic medication (and it seems unlikely given that BOP thinks that he is malingering), although in my experience of dealing with the mentally ill over 20 years of criminal defense work, it is clear to me that he is in need of such medical attention.

6. ¶¶128-9 indicates that Mr. Payen has used cocaine, crack, and marijuana since the age of 15. In addition, Mr. Payen indicates that he has also used LSD, mushrooms, heroin, and ecstasy.

7. ¶138 indicates that Mr. Payen worked for a deli in Newburgh. It was in Munsey, New York, and all his additional, transient work was in Spring Valley, New York.

Finally, although the Government disputed the contention throughout the trial, and at great length during its rebuttal summation, it is clear from the evidence that Mr. Payen played a "minor role" in the instant event and should be given a mitigating role adjustment. Despite the fanciful claims that Mr. Payen played any significant role in the events leading up to May 20, 2009, it is clear that he was a warm body, incapable of any decisionmaking or input beyond menu choices. It was Mr. Payen who feared that he could not go to Florida after the "mission" because he lacked a passport, who was ridiculed by his co-conspirators for ceaselessly picking his nose and carrying around his backpack, and who interrupted planning sessions to proclaim his feelings about chicken. When the defendants picked up the missiles at the Connecticut facility, Mr. Payen's facial expressions displayed the emotional condition of a 6-year-old child, grinning foolishly but comprehending little. The Government can claim, as it did at trial, that Mr. Payen played a role in all this (and, most absurdly, that he made the suggestion that "codenames" were necessary). No reasonable, objective, non-advocate could support the idea that he had any input, or did anything other than attend and follow. (Even that minor task seemed beyond his ability, as he talked to a girlfriend on the "operation" cellphone during the "mission").

For all the reasons stated in all the moving papers and in oral argument, Mr. Payen requests that this Court sentence him below the statutory minimum and to a term not to exceed 10 years. In light of the Court's previous ruling on sentencing entrapment and manipulation, Mr. Payen requests that this Court sentence him to 300 months total, all sentences to run concurrently. Further, Mr. Payen should be designated to a BOP facility with a medical center (such as Butner, Springfield, or Devons) so that his significant mental health issues can be addressed in a therapeutic setting. To let BOP place Mr. Payen in a Communication Management Unit (such as exists at Florence or

Marion) would be totally unnecessary and cruel. There is no one in the world who would speak with Mr. Payen, and the silence of solitary confinement would, in the end, be fatal.

Respectfully submitted,

s/Sam Braverman
Sam Braverman
Attorney for Mr. Payen

[*]Admitted In New York    [+]Admitted in New Jersey
The Law Office of Sam Braverman is a full service firm assisting clients, both in trial courts and on appeal, in New York and New Jersey state courts and in federal court nationwide